**STATE of Missouri, Respondent,**

v.

**Charles Keith DECKER, Appellant.**

**No. 40011.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 11, 1979.

Motion for Rehearing or Transfer
Denied Nov. 20, 1979.

Application to Transfer Denied
Jan. 15, 1980.

Scott Richardson, Clayton, for appellant.

John Ashcroft, Atty. Gen., Richard Thurman, Asst. Atty., Gen., Jefferson City, for respondent.

STEPHAN, Presiding Judge.

Defendant-appellant Charles Decker was indicted for and tried jointly on the charges of first-degree robbery and stealing a motor vehicle. Defendant's motion to sever the offenses was denied. He was convicted on the stealing count and acquitted of the robbery. Having been tried under the Second Offender Act, § 556.280, RSMo 1969, he was

sentenced by the trial court to ten years in prison. We affirm.

On June 25, 1976, defendant took a test drive of some fifteen to twenty minutes in a new yellow Toyota Corolla lift-back with salesman Patrick Logue of Placke Toyota. After they returned to the lot, located on South Kingshighway in the City of St. Louis, defendant told Logue that he would have to confer with his wife before making a decision about the car. Defendant departed on foot. Approximately ten minutes later, Logue saw defendant drive off the lot in the same yellow Corolla, without the permission of Logue or any other Placke employee. Logue testified that the theft occurred at approximately 4:00 or 5:00 p. m. That evening, shortly after 9:00 p. m., a Schnuck's grocery store at Gravois and Hampton in the City of St. Louis was robbed at gunpoint. The robber briefly exhibited a small pistol to the employee attending the store's customer service counter and demanded money. The employee later identified defendant as the robber. Two other employees who did not witness the robbery testified that they observed defendant loitering around the service counter between 8:00 and 8:30 p. m.; one had noticed defendant standing around the counter on several prior occasions during the day, as early as 3:00 p. m., for as long as an hour or so. A fourth employee testified that he saw a man, clothed as the robber was described by the other witnesses, running across the Schnuck's parking lot shortly after 9:00 p. m.; he subsequently saw a yellow foreign fast-back sub-compact automobile with dealer stickers in the window, hurriedly leave the lot. However, he could positively identify neither the man nor the vehicle as defendant and the stolen Toyota, respectively. Defendant presented an alibi defense to both charges. As noted, the jury convicted defendant of the theft of the automobile, and acquitted him of the robbery of the store.

In his first assignment of error, defendant contends that the trial court erred in failing to grant his motion to sever the offenses listed in the indictment. Joinder of offenses is governed by Rule 24.04, which, at the time of defendant's trial, provided: [1]

"All offenses which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count when authorized by statute. Any indictment or information may contain counts for the different degrees of the same offense or for any one of such degrees."

Defendant disputes the trial court's ruling that the two offenses charged could be found to constitute parts of a common scheme or plan. He argues that there was no evidence to link the stolen car with the robbery; and that, even if there were such evidence, there was no indication that the car was stolen for the purpose of facilitating the robbery, which, according to the evidence adduced at trial, was committed some four to five hours later.

We note initially that the question of whether a motion to sever offenses should be granted is a matter within the discretion of the trial court. *State v. Crane*, 559 S.W.2d 294, 296 (Mo.App.1977); *State v. Duren*, 556 S.W.2d 11, 20 (Mo.banc 1977), reversed on other grounds, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Broad joinder is encouraged in the interest of more efficient administration of criminal justice. *State v. Johnson*, 505 S.W.2d 11, 12 (Mo.App.1974); *State v. Easton*, 577 S.W.2d 953, 957 (Mo.App.1979). However, the benefits to be derived from joinder of offenses should be weighed against the potential prejudice to defendant resulting from that joinder. In assessing that prejudice, the court should consider the number of of-

1. Defendant's trial began on November 14, 1977. The quoted version of Rule 24.04 was in effect from July 1, 1971, until January 1, 1979.

fenses charged, the complexity of the evidence to be offered and the consequent ability of the jury to distinguish the evidence and apply the law intelligently as to each offense. *Duren,* supra, 20. Although the acquittal of a defendant on one count should make an appellate court sensitive to the possibility of improper joinder, it does not in itself mandate such a finding. *United States v. Ragghianti,* 527 F.2d 586, 587 (9th Cir. 1976); *United States v. Johnson,* 462 F.2d 608, 609 (8th Cir. 1972). Reversal of the trial court is proper only upon a clear showing of prejudice and abuse of the trial court's discretion. *United States v. Lewis,* 547 F.2d 1030, 1033 (8th Cir. 1976), cert. den. 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977).

■ In the instant case, we do not believe that that discretion was abused. The stolen automobile was sufficiently linked to the robbery through the testimony of the Schnuck's employee who, shortly after the time of the robbery, saw a man in the described attire of the robber running across the parking lot from the store and subsequently saw a car matching the description of the Toyota hurriedly leaving the lot. Given that link, and given the testimony that defendant had been loitering around the service counter for some time prior to the theft of the car, we believe it not unreasonable for the trial court to have inferred, before the judgment of acquittal on the robbery count, that the car was stolen for the express purpose of providing a means of flight after the robbery and that the two incidents were therefore part of a common scheme. Upon review of the transcript, we find little chance of confusion of the evidence by the jury. The charges were distinct. Factually, both incidents were relatively simple; they were separated chronologically and spatially. There was no overlap in the testimony: one witness, Logue, testified exclusively in regard to the auto theft; four witnesses, Schnuck's employees, testified exclusively in regard to the robbery. We find no prejudice to defendant and accordingly rule the point against him.

■ Defendant next contends that the court erred in failing to grant his motion for a mistrial after the court asked one of the state's witnesses a question which, defendant argues, evinced the court's lack of impartiality and constituted an improper comment on defendant's guilt. In cross-examination of Schnuck's employee Rita Leber, defense counsel attempted (as he did with all the store employees who testified) to establish that there were differences between the weight and hair color of the robber on June 25, 1976, and that of defendant as he looked in a lineup picture taken several months thereafter. During that cross-examination the following exchange occurred:

"Q [Defendant's attorney] You also said the man you saw on June 25th was heavier or lighter?

A [Witness Leber] He looked heavier. He looked a little heavier.

Q Which one? I'm sorry. This man looked heavier?

A The man on the far right.

THE COURT: Does he look heavier in the picture or heavier on June 25th?

A He looked heavier in the lineup than he did on the day of the robbery."

Counsel thereafter approached the bench and requested a mistrial on the grounds that the court's question had equated defendant and the robber.

Error, if any, resulting from the court's inquiry was harmless because the question was directed only to the issue of the identity of the robber and defendant was acquitted of the robbery charge. See *State v. Turner,* 272 S.W.2d 266, 271 [12] (Mo.1954). The jury chose not to believe the state's identification testimony on the sole charge on which Ms. Leber testified. We can perceive no logical basis whatever for defendant's argument that the error was cumulative, affecting the jury's deliberation on the separate and distinct charge of stealing.

Defendant further contends that the trial court erred in failing to grant a mistrial when the prosecutor asked one of defendant's witnesses, Mrs. Juanita Williams, whether she had previously testified on de-

fendant's behalf. Defendant argues that the state was thereby permitted to introduce, indirectly, inadmissible evidence of defendant's commission of other crimes. See, e. g., *State v. Lee*, 486 S.W.2d 412, 414 (Mo.1972).

■ We rule the point against defendant for two reasons. Defendant's objection, coming as it did after the witness had answered the question, was not timely. *State v. Peterson*, 546 S.W.2d 175, 179 (Mo.App. 1976); *State v. Tibbs*, 523 S.W.2d 108, 110 (Mo.App.1974); *State v. Phillips*, 480 S.W.2d 836, 837 (Mo.1972). An exception to the above principle occurs when a party is not given the opportunity to voice an objection because of a quick response by the witness; however, that party must make an objection at the earliest opportunity and move to strike the answer in order to preserve the trial court's ruling for appeal. *State v. Peterson*, supra, 179–180. Defendant did not contend at trial and does not now contend that that exception applies to this case; nor did he move at trial to strike Mrs. Williams' reply. The point is therefore not preserved.

■ Furthermore, every error which occurs in the course of a trial does not require the grant of a mistrial. The declaration of a mistrial is a drastic remedy which is to be used only in extraordinary circumstances. *State v. Phelps*, 478 S.W.2d 304, 307–308 (Mo.1972); *State v. Smith*, 431 S.W.2d 74, 82–83 (Mo.1968). In this case, the prosecutor's question of Mrs. Williams gave no indication that the previous testimony had come in the course of a criminal trial rather than a civil suit or in a preliminary hearing in the instant case. The disputed question was the last of a series designed to explore the possible bias or interest of the witness on behalf of defendant. This is a permissible field of inquiry for the state, as it bears on the weight to be accorded the testimony of defendant's witnesses. *State v. Calmese*, 541 S.W.2d 349, 351 (Mo.App.1976); *State v. Williams*, 513 S.W.2d 718, 721 (Mo.App.1974). The extent of that inquiry is largely left to the discretion of the trial court and its ruling is to be

overturned only in the case of a clear abuse of that discretion. *State v. Neal*, 526 S.W.2d 898, 901 (Mo.App.1975). Our reading of the transcript leads us to conclude that the jury could have perceived the question as nothing more than part of the investigation into Mrs. Williams' bias as a witness. The trial court had the opportunity to assess the impact of the question. We find no clear abuse in its ruling.

■ Defendant next alleges error in the court's denial of his motion for a judgment of acquittal on the stealing charge based on the state's failure to prove ownership of the automobile, an essential element of the crime. Sections 560.156, RSMo 1969, and 560.161, RSMo 1975. The argument is without merit.

"Lawful custody and control of property, even though actually owned in the formal or strict sense by another, is in the eyes of the law a sufficient attribute of ownership to support an averment and proof of ownership against one charged with stealing property belonging to another." *State v. Hill*, 528 S.W.2d 798, 801 (Mo. App.1975).

The instruction given on this count, MAI–CR 7.70, predicated defendant's guilt on the stealing of a 1976 Toyota which was "in the charge of Pat Logue." Ownership, or lawful custody, like every other element of the offense of stealing, may be proved by circumstantial evidence. *City of Kansas City v. Stoner*, 424 S.W.2d 768, 771 (Mo.App. 1968). See also *State v. Cline*, 452 S.W.2d 190, 193 (Mo.1970) and *State v. Webb*, 423 S.W.2d 795, 798 [4, 5] (Mo.1968). In this case, Logue testified that he was an employee of Placke Toyota, a new car dealership; that when defendant expressed an interest in the automobile he, Logue, took defendant on a test drive of some fifteen minutes; and that he engaged defendant in a brief sales discussion upon their return to the lot. In conjunction with the common understanding of the mode of operation of automobile dealerships, this testimony supports the inference that Logue, as agent of the owner of the vehicle, had the lawful authority to remove the vehicle from the premises of the owner and negotiate its sale

on behalf of the owner. We believe this clearly sufficient to establish that the automobile was in the "charge" of Logue during such time as Logue was engaged in the business of that owner.

 In his final assignment of error, defendant contends that the court committed plain error in failing to instruct on the charge of tampering with a motor vehicle, § 560.175, RSMo 1969, as a lesser offense included within the charge of stealing. Defendant argues that such instruction (MAI–CR 7.80) was compelled by Rule 26.02(6) because "it could be argued that the Defendant was merely taking another test drive, albeit unauthorized, with the intent of eventually returning the car to Placke Toyota."

Defendant cites no authority in support of the proposition that tampering is a lesser included offense of stealing, and we need not decide the issue in this case, for instructions on lesser included offenses must be given only if they are supported by the evidence. *State v. Pride*, 567 S.W.2d 426, 431 (Mo.App.1978); *State v. Sturgell*, 530 S.W.2d 737, 739 (Mo.App.1975); *State v. Craig*, 433 S.W.2d 811, 815 (Mo.1968). As noted, defendant's only defense at trial to the stealing charge was alibi. Defendant's post-trial hypothesized theory explaining the asportation of the auto is but speculation totally devoid of support in the record. The record indicates that defendant did not return the vehicle to Placke after a second short test drive.[2] There is no explanation as to why he may have been prevented from doing so by intervening circumstances despite his positive intention in that regard. Cf. *State v. Sturgell*, supra, in which the court held that it was not error to fail to instruct on tampering even though the stolen auto was abandoned and recovered within "a few hours." Id., 738. See also *State v. Ivery*, 534 S.W.2d 107 (Mo.App. 1976). The point is without merit.

Affirmed.

KELLY and STEWART, JJ., concur.

2. The record does not detail exactly how, when or where the stolen auto was recovered. The only pertinent information is Logue's statement that "They brought [the car] back to the lot

. . . [a] few days [after it was stolen]." It is clear from the context that "they" refers to persons other than defendant.